IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

PENNY HOILMAN,                      )
                                    )
           Plaintiff,               )
                                    )
v.                                  )    No. 2:08-CV-017
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
           Defendant.               )

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act. For the reasons provided herein, defendant's motion for summary judgment [doc. 22] will be granted, and plaintiff's motion for judgment on the pleadings [doc. 14] will be denied.

I.

*Procedural History*

Plaintiff was born in 1958. She applied for benefits in September 2004, claiming to be disabled by fibromyalgia and depression. [Tr. 50, 132]. Plaintiff alleges a disability onset date of September 3, 2004. [Tr. 114]. The application was denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in January 2007.

By decision dated February 28, 2007, the ALJ denied benefits. He concluded that plaintiff suffers from "fibromyalgia and degenerative joint disease of the cervical spine," which are "severe" impairments but not equal, individually or in concert, to any impairment listed by the Commissioner. [Tr. 18-19]. The ALJ found plaintiff's subjective complaints to be somewhat overstated and, relying on vocational expert testimony, further concluded that plaintiff retains the residual functional capacity ("RFC") to either return to her past relevant work or to perform a significant number of other jobs existing in the economy. [Tr. 19-23]. Plaintiff was accordingly deemed ineligible for benefits.

Plaintiff then sought, and was denied, review by the Commissioner's Appeals Council, despite the submission and consideration of additional documents. [Tr. 6, 9, 358-411]. The ALJ's ruling thus became the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g).

II.

*Applicable Legal Standards*

Review of the Commissioner's decision is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A). Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id*.

III.

*Background*

Plaintiff has a high school diploma, and her past relevant employment is as an administrative assistant. [Tr. 86, 214]. She alleges constant total-body pain and stiffness so severe that she is almost unable to move. [Tr. 55]. Plaintiff cares for her young child but is purportedly able to perform only minimal housework and shopping. [Tr. 56, 58]. She has told the Commissioner that she is unable to sit or stand for more than brief periods and that her pain "prevents [her] from sleeping (even with sleeping pill) . . . ." [Tr. 57, 109, 419,

4

423]. Plaintiff also claims to be impacted by worsening depression, confusion, and impaired concentration. [Tr. 105]. In plaintiff's words, "My fight is over, I cannot push myself anymore." [Tr. 84].

IV.

*Analysis*

A. Sentence Six

Plaintiff argues that this case should be remanded to the ALJ for consideration of her late-submitted evidence [Tr. 358-411]. As noted above, the Appeals Council considered those documents but nonetheless denied the request for review.

"[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted). This court can, however, remand a case for further administrative proceedings, but only if the claimant shows that her evidence meets each prong of the "new, material, and good cause" standard of sentence six, 42 U.S.C. § 405(g). *Id*. Sentence six mandates that before a claim will be remanded for consideration of additional evidence, the new evidence must be material and there must be good cause for the failure to present it at the hearing level. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). The claimant bears the burden of proof on each of these elements. *Id*.; *Oliver v. Sec'y of Health*

5

*& Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

Plaintiff's late-submitted documents pertain almost entirely to a July 2007 "Quantitative Electroencephalogram" performed by Myra Preston, Ph.D. [Tr. 358-399]. In addressing sentence six's good cause requirement, plaintiff argues only that "this evidence did not exists [sic] prior to the Administrative Law Judge's decision, and thus there was good cause for not submitting it." [Doc. 15, p. 16]. Plaintiff has not shown good cause. *See Oliver*, 804 F.2d at 966 (newness and good cause are not the same thing); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Sentence six remand is not warranted where a plaintiff "*offers absolutely no explanation of why the medical evidence she seeks to have considered on remand could not have been presented to the ALJ . . . .*" *Willis*, 727 F.2d at 554 (emphasis added).

The remainder of plaintiff's sentence six evidence is a September 2007 letter of advocacy submitted by physician's assistant Laraine Bowen. [Tr. 401-02]. The letter is essentially cumulative of another letter from Ms. Bowen dated March 10, 2005, which the ALJ considered. [Tr. 226-27]. Cumulative evidence does not satisfy sentence six's materiality requirement. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990).

Because plaintiff has not satisfied sentence six's good cause and materiality prongs, her request for sentence six remand will be denied. *Sizemore*, 865 F.2d at 711; *see also Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("we decline to

formulate arguments on [plaintiff's] behalf . . . . Rather, we limit our consideration to the particular points that [plaintiff] appears to raise in her brief on appeal."). Plaintiff's Appeals Council documents [Tr. 358-411] accordingly have not been considered by this court.

### B. Treating Source Opinions

The ALJ concluded that plaintiff retains the RFC for a range of light exertion limited by no more than frequent postural activities, only occasional overhead reaching, and no concentrated exposure to hazards. [Tr. 22]. At the administrative hearing, the ALJ obtained vocational expert ("VE") testimony that a significant number of jobs would exist for a hypothetical claimant of plaintiff's RFC, age, education, and work experience. [Tr. 218-25, 427-28].

Plaintiff argues that the ALJ erred by not adopting the more restrictive opinions of treating physicians Turney Williams and Jeffry Bieber. According to the VE's testimony, all employment would be precluded by an RFC that was consistent with those treating sources' opinions. [Tr. 429-31].

The administrative record shows complaints of pain and fatigue dating back to at least 2001. [Tr. 140-59]. Imaging from 2002 and 2003 shows hernation and disc disease at C5-6 and C6-7. [Tr. 165, 167].[1]

Plaintiff was referred to Pain Medicine Associates in February 2004. She exhibited cervical tenderness but had full strength and range of motion throughout. [Tr.

---

[1] In April 2004, nurse practitioner Deborah Beall opined that "her symptoms are not coming from her herniated disc." [Tr. 182].

7

184]. In July 2004, Dr. Williams observed "[r]elatively diffuse myofascial tenderness . . . in all muscle groups." [Tr. 179]. In January 2005, he wrote,

> Ms. Hoilman had requested to withdraw from the work force. She has been encouraged not to discontinue work by both myself and Dr. Cooper. We have consistently encouraged a very slow graded exercise regimen; however, she states that she "just doesn't feel like it." She had requested forms to be completed stating that she was totally disabled. I understand that there can be a difference of opinion regarding this issue; however, it was my impression, with the concurrence of Dr. Cooper from Psychology, that Ms. Hoilman would not be well served by being labeled disabled, and we declined to complete the requested forms. . . . We have explained that we do not believe the long term utilization of narcotic analgesics is appropriate for her condition and that her condition is best treated with education and a continuation of normal activities as tolerated and a graded exercise regimen.

[Tr. 175]. Dr. Williams repeated his opinion the following month. [Tr. 174]. However, for reasons not made clear by the administrative record, he opined in July 2005 that "in light of her complaints, we would have to consider her functionally disabled and not likely eligible to return to the workforce." [Tr. 173]. Dr. Williams declined to complete a functional assessment at that time, writing, "The specificity of the form would likely require a functional capacity evaluation to appropriately complete and was accordingly deferred." [Tr. 173].

In March 2005, Dr. Bieber and Ms. Bowen, both of Arthritis Associates of Kingsport, submitted a letter of advocacy on plaintiff's behalf. In material part, the letter states,

8

> Ms. Hoilman was first evaluated at our office on September 13, 2004 for widespread pain. . . . She has also noted significant difficulty with memory, concentration and fatigue.
>
> Laboratory studies have been essentially normal with the exception of an elevated rheumatoid factor. Physical examination exhibited diffuse tenderness over back, arms, forearms, chest and legs. Joint findings revealed no synovitis. The history and physical examination findings are consistent with a diagnosis of fibromyalgia.
>
> . . .
>
> It is our understanding that Ms. Hoilman's condition has had an adverse affect on her performance at work and has [sic] not been able to maintain gainful employment. Our office does not perform functional capacity evaluations, due to the volume of our practice and the subjectivity of such evaluations. It has however, [sic] been my experience that the performance of a fibromyalgia patient on such an examination, [sic] may not be a true reflection of their overall ability to perform such tasks repetitively and consistently from day to day.
>
> . . .
>
> Given Ms. Hoilman's medical condition, I do not believe that she is able to function to [sic] a productive work environment.

[Tr. 226-27]. In August 2005, Dr. Bieber completed a Medical Opinion Form. He opined that plaintiff cannot work at even the sedentary level of exertion due to fibromyalgia, sedation, and the need for excessive absences. [Tr. 242-44].

As examining and treating specialists, the opinions of Drs. Bieber and Williams are generally entitled to greater weight than the opinions of other sources. *See* 20 C.F.R. § 404.1527(d)(1), (2), (5). However, the Commissioner is not required to accept a treating physician's opinion if it is not supported by sufficient medical data and if a valid basis is

9

articulated for the rejection. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). This rule is further complicated in fibromyalgia cases, because typically "fibromyalgia patients present no objectively alarming signs." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Instead, "The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." *Id.* at 244[2]

Having considered the record as a whole, the court concludes that the ALJ's RFC findings were supported by substantial evidence. To the extent that the treating sources opined that plaintiff is "disabled" or "unable to work," the ultimate question of disability is reserved to the Commissioner, not the treating source. *See* 20 C.F.R. §§ 404.1527(e)(1). Further, this is not a case, as in *Rogers*, where the treating specialists "continually tested for and [the claimant] increasingly exhibited the medically-accepted and recognized signs of fibromyalgia." *Rogers*, 486 F.3d at 244. The handwritten notes of Dr. Bieber's office occasionally mention tenderness, but there is little to no evidence in the present record of "(1)

---

[2] The court notes that it is not the treating physician *diagnoses* of fibromyalgia that are at issue in this case, as the ALJ accepted that plaintiff in fact suffers from that condition. Instead at issue is the *weight* to which the treating physicians' vocational opinions are entitled under substantial evidence review. *Cf. Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) ("a *diagnosis* of fibromyalgia does not automatically entitle [the claimant] to disability benefits . . . . Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority.") (emphasis in original) (citation and quotation omitted).

the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." *See id.*[3]

Nor is this a case where, as in *Rogers*, the ALJ relied solely on nonexamining sources. *See id.* at 245. In September 2006, consulting examiner Dr. Karl Konrad conducted "[t]welve point fibromyalgia pressure point testing [which was] negative." [Tr. 245-46]. Plaintiff was obese but exhibited no tenderness. [Tr. 245-46]. Plaintiff could change positions "with no or minimal difficulty." [Tr. 246]. In sum, Dr. Konrad deemed his examination "unremarkable" and opined that plaintiff has <u>no</u> vocational limitations. [Tr. 247-51].[4]

Also, physical therapist Marvin Payne performed a Functional Capacity Evaluation ("FCE") in December 2005.[5] Although plaintiff reported "10/10" pain, the inability to stand for more than ten minutes, and the ability to lift only very light weight on a good day [Tr. 311, 314], the conclusions of the FCE were that plaintiff is capable of light to medium work, with a demonstrated "ability for constant forward bending, rotation in sitting and standing, sitting, walking, stair climbing and ladder climbing." [Tr. 317-18].

---

[3] Without explanation, Dr. Bieber's Medical Opinion Form states that plaintiff meets the American College of Rheumatology criteria for fibromyalgia. [Tr. 244].

[4] Dr. Konrad's findings are not inconsistent with the June 2006 notes of Dr. Bieber, which state that medication was helping both with energy and with pain, and that plaintiff "has felt like doing more - has learned to pace herself better." [Tr. 293].

[5] The court notes that Dr. Bieber was skeptical whether an FCE could reliably predict the capabilities of a fibromyalgia patient, whereas Dr. Williams thought that an FCE would be appropriate. This difference of opinion illustrates the "zone of choice" within which ALJ's must operate. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Therefore, this is not a case in which the Commissioner has rejected the well-supported opinion of a treating physician, without explanation, in favor of unsupported inferior sources. It is in fact quite the opposite.

Lastly, as noted by the ALJ, the views of Drs. Williams and Bieber were based largely on plaintiff's subjective complaints, and there is evidence that those complaints are overstated. For example, Dr. Bieber's August 2005 notes contain the opinion, "Depression is really a problem." [Tr. 190]. In October 2005, plaintiff complained to Dr. Bieber of depression, anxiety, and impaired concentration. [Tr. 189]. In July 2006, she told Dr. Bieber that "I can't go on." [Tr. 292]. However, psychological examiner Kathy Miller and psychologist Robert Spangler performed a mental status examination in February 2005. They noted plaintiff's report, "She does not feel debilitated by her history of depression. . . . She was prescribed Paxil by her rheumatologist, which has given her remarkable benefit." [Tr. 214, 216]. After interview and testing, Dr. Spangler and Ms. Miller opined that plaintiff's concentration would be no more than mildly limited. [Tr. 216].

Plaintiff in June 2005 told the Commissioner that "pain prevents me from sleeping (even with sleeping pill) [and] therefore[] waking in a timely manner [and] feeling physically able for personal hygiene is difficult." [Tr. 109]. However, plaintiff told Dr. Bieber in September 2004 that Ambien helps her sleep. [Tr. 199]. She told Dr. Bieber in February 2005 that she was sleeping "OK" secondary to Ambien and felt more rested. [Tr. 195]. Dr. Bieber's May 2006 notes describe plaintiff's sleep as "good." [Tr. 296]. His July

2006 notes reference "pretty good" sleep with increased morning energy. [Tr. 292].

Plaintiff's testimony that she can lift no more than a gallon of milk on a good day [Tr. 421] stands in stark contrast to the FCE testing results. Further, as noted by the ALJ, there is evidence of noncompliance with treatment - further diminishing the credibility of plaintiff's subjective complaints.

Plaintiff was referred to Appalachian Neurosurgical Clinic in late 2003. Physician's assistant Scott Hardy and neurosurgeon Steven Hamel subsequently wrote in January 2004,

> She was diagnosed with a ruptured disc with no radicular pain but with a chronic pain syndrome. She was started on medication and sent to Dr. Tchou for epidural steroids. She has consistently failed to keep her appointments there but continues to request refills for pain medications from our office. We feel she is noncompliant with our course of treatment and cannot continue giving her pain medications.

[Tr. 169]. Mr. Hardy and Dr. Hamel thought that plaintiff's pain and noncompliance were worsened by "family stressors." [Tr. 169-70].

In October 2004, plaintiff reported to Dr. Williams's staff that she "has not been able to do the walking program suggested by Dr. Cooper yet secondary to her tiredness and her pain, but says that she is willing to continue to try." [Tr. 178]. Five weeks later, plaintiff reported that "she has not been able to do the walking program suggested by Dr. Cooper due to the weather and to the fact that she just hasn't felt well enough to do this." [Tr. 177]. Plaintiff has acknowledged that physical therapy is helpful to her [Tr. 188], yet in July 2006 Dr. Bieber noted that she had not attended physical therapy in the past month

13

due to "*vacation, etc.*" [Tr. 292] (emphasis added).

On the facts of the present case, it was well within the ALJ's discretion to rely upon the strain of evidence that he found most credible. His conclusions were consistent with the VE testimony and the March 2005 Physical RFC Assessment of nonexamining Dr. Nathaniel Robinson. [Tr. 219-25]. The ALJ accounted for plaintiff's documented conditions and her subjective complaints in restricting her to a range of light work, which notably was more limiting than the FCE findings or the opinion of Dr. Konrad.

A different factfinder could perhaps have reached a different conclusion below, but that is not the standard of review binding this court. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *See Mullen*, 800 F.2d at 545 (citation omitted).

The Commissioner's final decision is supported by substantial evidence and thus must be affirmed. An order consistent with this opinion will be entered.

ENTER:

　　　　　　　s/ Leon Jordan　　　　　
　　　　　United States District Judge

14

Case 2:08-cv-00017-RLJ-DHI   Document 24   Filed 01/06/09   Page 14 of 14   PageID #: 86